Joseph V. SAVINO and Ernestine Savino, Plaintiffs–Appellees,

v.

THE CITY OF NEW YORK, Kyle Raymond Sturcken, Michael Gargan, Raymond Dowd, David Bartholomew, John Baner, Sharon Brooks, Jose Perez, Howard Wilson and John Does "1" through "3," Defendants–Appellants.

No. 02–7108.

United States Court of Appeals, Second Circuit.

Argued: Oct. 24, 2002.

Decided: May 22, 2003.

64

Paul L. Herzfeld, (Stuart I. Parker and Francis F. Caputo, of counsel, Michael A. Cardozo, Corporation Counsel of the City of New York, on the brief), New York, NY, for Defendants–Appellants.

D. Daniel Engstrand, Jr., Doniger & Engstrand, LLP, Islandia, NY, for Plaintiffs–Appellees.

Before: VAN GRAAFEILAND, JACOBS and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

This appeal addresses whether plaintiff's suit can survive defendants' motion for summary judgment on qualified immunity grounds with respect to his state-law claims for false arrest, malicious prosecution and abuse of process, and with respect to his § 1983 claim based on these state-law causes of action. We hold that defendants are entitled to summary judgment on qualified immunity grounds. Accordingly, we reverse and remand with instructions to the District Court to enter judgment in favor of defendants.

## I. BACKGROUND

Joseph V. Savino, a former medico-legal investigator in the New York City Office of the Chief Medical Examiner, filed this action in the United States District Court for the Southern District of New York on December 8, 1997 against the City of New York ("City") and several members of the New York Department of Investigation ("DOI") and the New York Police Department.[1] The relevant background is set forth in the District Court's October 30, 2001 opinion and order granting in part and denying in part defendants' motion for summary judgment. *Savino v. City of New York*, 168 F.Supp.2d 172, 174–177 (S.D.N.Y.2001). We assume familiarity with that opinion and restate here only such information as is necessary to resolve this appeal.

In late 1994 and throughout 1995, Savino had been widely described in the New York news media as the highest paid City

---

1. Ernestine Savino, Joseph Savino's wife, was also a named plaintiff in this action, asserting claims for loss of services and society as a result of the harm defendants caused her hus-band. Because Ms. Savino's claims are entirely derivative of her husband's claims, however, we need not address them separately.

employee based on his overtime earnings, and was dubbed by some in the media as the "King of Overtime." On February 12, 1995, Savino left the scene of a crime with a gold ring belonging to the dead victim.[2]

Savino claimed that the removal of the ring was accidental, but on June 26, 1996, following an investigation by the DOI, he was arrested and charged with various crimes relating to the alleged theft.[3] In

2. According to the District Court, the events taking place on February 12, 1995 were as follows:

> At approximately 4:00 PM on February 12, 1995, Police Officers Raymond Dowd and Michael Gargan arrived at Room 4254 of the Marriott Marquis Hotel in Manhattan, which was the scene of an apparent suicide. Defendant Sergeant Sharon Brooks arrived a short time later. According to Gargan and Dowd, they searched the decedent's pocketbook and wallet and discovered some cash and a gold ring inset with five clear stones in a zippered pocket of the wallet. Dowd testified that he returned the ring to the pocket of the wallet. Gargan testified before the Grand Jury that he observed Dowd return the ring to the wallet. However, Gargan wrote in his contemporaneous notes that Dowd had informed him that he returned the ring. No other officer observed the ring in the wallet.
>
> Detectives John Baner and David Bartholomew arrived at the scene at approximately 4:30 PM. The officers had noticed three prescription pill bottles in Room 4254. The pill bottles were ordinary prescription bottles made of orange plastic with prescription labels covering most of the outside surface. Bartholomew says that he looked at the pill bottles and did not recall seeing a ring inside. He did not, however, pick up the bottles or open them to examine their contents. The detectives also read a suicide note left by the decedent, in which she stated that she had placed a gold ring in her wallet that she wanted her sister to have.
>
> Savino arrived at the death scene at approximately 5:30 PM. Sturcken and defendant José Perez, a DOI investigator, say that Savino told them that he had searched the decedent's wallet for identification, but Savino denies it. According to the police, the officers left Savino alone in the room with the decedent and her effects for approximately five minutes while he took pictures. Savino denies being in the room alone. In any event, Brooks testified that she watched Savino through the doorway and could also see the decedent's pocket-

> book, which had the wallet and ring inside. She did not see Savino approach the pocketbook or remove the ring from the wallet during the five minutes that he was allegedly alone in the room. After Savino completed his investigation, he took possession of the pill bottles, a common practice of [medico-legal investigators], and left the scene.
>
> While vouchering the decedent's property after Savino had left the scene, Gargan and Dowd discovered that the ring was missing. After an unsuccessful search for the ring, the officers called Baner and Bartholomew to find out if they had taken the ring. Neither Baner nor Bartholomew had taken the ring, and both returned to the death scene to help look for it. After also failing to find the ring, Bartholomew telephoned [the Office of the Chief Medical Examiner for the City of New York] at approximately 11:00 PM to speak to Savino. The woman with whom Bartholomew spoke said that Savino was not there, and that she would page him and ask him to call the hotel room. At approximately 11:15, Savino returned Bartholomew's call from his home in Tarrytown and spoke with Baner. Baner told Savino that they were having trouble with some "property" at the scene. Savino replied that he had a ring, which he had found in one of the pill bottles he took from the scene. They agreed that Savino's brother, Lawrence, who was also [a medico-legal investigator], would bring the ring to the police station that night.
>
> Savino prepared an Investigator's Report and a Supplemental Case Information ("SCI") form relating to the investigation of the death scene. On the SCI form, Savino stated that he had found "a yellow ring with five white stones" in one of the pill bottles he had removed from the scene.
> *Savino*, 168 F.Supp.2d at 175–176.

3. According to the District Court, the events leading up to and surrounding Savino's arrest were as follows:

> The Police Department filed a complaint with the DOI on February 28, 1995 alleging

September 1996, a New York State grand jury indicted Savino on these charges. A petit jury acquitted Savino on all counts on January 27, 1997.

In his complaint, Savino alleges that he was prosecuted for the theft of the ring as retaliation for the embarrassing media attention stemming from his allegedly exorbitant overtime pay. He asserts claims against defendants for (1) various state-law torts, including false arrest, malicious prosecution, and abuse of process, (2) violations of 42 U.S.C. § 1983 based on these state-law causes of action, and (3) violations of Article I, Sections 6 and 12 of the New York State Constitution.

On February 16, 2001, defendants moved for summary judgment on qualified immunity grounds, and on October 31, 2001, the District Court (Miriam Goldman Cedarbaum, *Judge*) granted in part and denied in part defendants' motion for summary judgment. *Savino,* 168 F.Supp.2d at 181.

Specifically, the District Court *granted* summary judgment to all of the defendants on Savino's claims of defamation, negligence, intentional infliction of emotional distress, and violation of the New York Constitution. *Id.* at 178–79. It also granted summary judgment to the police-officer defendants (Gargan, Dowd, Brooks, Bartholomew and Baner) with respect to the false arrest claims because the police-officer defendants did not " 'affirmatively instigate[ ] or procure[ ] [Savino's] arrest,' " *id.* at 177 (quoting *King v. Crossland Savings Bank,* 111 F.3d 251, 256–57 (2d Cir. 1997)).

The District Court *denied* defendants' motion for summary judgment with respect to Savino's claims for malicious prosecution, false arrest (against the DOI defendants and the City), and abuse of process, as well as his § 1983 claims based on these state-law torts.

With respect to the malicious prosecution and false arrest claims, the District Court concluded that the existence of probable cause constitutes a complete defense to both of these state-law claims, as well as to Savino's § 1983 claims based upon them. *Id.* at 178. It also determined that "[i]ndictment before a grand jury creates a presumption of probable cause" that is applicable to each of these claims. *Id.* (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996), and *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983)).

Although Savino was indicted by a grand jury, the District Court concluded

that Savino had stolen the ring from the death scene. . . . By the end of March 1995, [DOI Investigator Kyle] Sturcken, with the assistance of [DOI Investigator Jose] Perez, had interviewed all of the officers and detectives who had been present at the death scene, and informed [Commissioner of the DOI Howard] Wilson of their findings. On September 26, 1995, two weeks after Savino's overtime earnings for the year were reported in the New York Post, Sturcken met with Assistant District Attorney ("ADA") Joseph Sullivan and his supervisor, ADA William Burmeister about the Savino case. ADA Sullivan re-interviewed all of the police witnesses. . . .

On June 26, 1996, Savino was arrested without a warrant by the DOI in Sturcken's office, and charged with (1) Petit Larceny, in violation of New York Penal Law § 155.25, (2) Falsifying Business Records in the First Degree, in violation of New York Penal Law § 175.10, (3) Offering a False Instrument in the First Degree, in violation of New York Penal Law § 175.35, and (4) Official Misconduct, in violation of New York Penal Law § 195.00. He was held in custody until the following day. On that day, the DOI issued a press release, edited by Commissioner Wilson, announcing Savino's arrest. The press release referred to the fact that Savino had been reported as the City's highest overtime earner. As a result of the arrest, Savino was suspended . . . for 30 days without pay.

168 F.Supp.2d at 176.

that there remained an issue of fact as to whether Savino could rebut the presumption of probable cause arising from his indictment. The District Court noted that this presumption can be rebutted "by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* (quoting *Colon*, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456, 455 N.E.2d 1248). The Court concluded that, based on the current record, defendants might have acted in bad faith. First, the court noted that

> [d]efendant Brooks testified at plaintiff's criminal trial that she could see both plaintiff and the decedent's pocketbook while plaintiff was allegedly alone in the hotel room, and that plaintiff did not remove the ring from the pocketbook at that time. This exculpatory evidence, however, was not presented to the grand jury. In the absence of that evidence, the testimony of Gargan and Dowd that plaintiff was alone in the room, and had the opportunity to steal the ring at that time, was misleading.

*Id.*

With respect to the police-officer defendants, the Court then reasoned: "It is unclear from the record whether the police defendants disclosed Brooks' information to the [prosecuting attorney] or the DOI. If they did not, the failure to do so would be sufficient evidence of bad faith to rebut the presumption created by the indictment with respect to them." *Id.* It concluded that, "[i]n the absence of the presumption, there are genuine issues of fact with respect to both probable cause and qualified immunity [of the police-officer defen-

dants]." *Id.* Accordingly, the Court denied the police-officer defendants' motion for summary judgment on Savino's malicious prosecution claim.[4]

The District Court relied on this same line of reasoning to deny summary judgment to the DOI defendants and the City on both the malicious prosecution and false arrest claims. The Court concluded that "[t]he record is ... unclear as to whether [DOI investigators] Sturcken, Perez and Wilson knew about Brooks' evidence." *Id.* at 178. Nevertheless, it reasoned:

> Sturcken and Perez were actively involved in the investigation, and "where law enforcement authorities are cooperating in an investigation ... the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 772 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). They, in turn, informed Wilson of their findings. Since on a motion for summary judgment all inferences must be drawn in favor of the non-moving party, I must assume that Wilson was also aware of what Brooks witnessed. Since all three allowed her testimony to be excluded from the grand jury, they are not entitled to a presumption of probable cause created by the indictment. As discussed above, without the presumption, there are genuine issues of fact with respect to probable cause and qualified immunity that the jury must resolve at trial.

*Id.* at 178–79 (internal citation omitted).

The District Court also denied defendants' motion for summary judgment with respect to the abuse-of-process claim. The Court noted that "'[i]n New York, a malicious abuse-of-process claim lies against a

---

**4.** Although the District Court's line of reasoning applied to both the false arrest and malicious prosecution claims, the Court had already granted summary judgment to the police-officer defendants on the false arrest claims on the unrelated ground that the officers did not "'affirmatively instigate[] or procure[] [Savino's] arrest.'" *See Savino*, 168 F.Supp.2d 172.

defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Id.* at 179 (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). It concluded that "[a] reasonable jury could infer from the timing of defendants' actions that the overtime issue was the motivating factor in the prosecution." *Id.* It also noted that "although abuse of process ... does not require that probable cause be lacking ... a lack of probable cause creates an inference of malice, supporting the collateral objective element" of this claim. *Id.* (citing *McMullen v. Michigan Home Furnishing Corp.*, 132 Misc. 838, 839, 230 N.Y.S. 508, 509–10 (N.Y.City Ct.1928)). For this reason, the District Court denied summary judgment to all of the defendants with respect to the abuse-of-process claim.

Finally, the Court reserved decision with respect to the issue of municipal liability until such time as it had a basis for determining whether defendant Wilson, the Commissioner of the DOI at that time, had final policy-making authority such that his actions could subject the city to liability under § 1983. *Id.* at 180–81; *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.").

Following the District Court's October 31, 2001 ruling, defendants filed a motion for reconsideration pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. On January 9, 2002, the District Court granted the motion for reconsideration with respect to the issue of whether Sergeant Brooks' testimony at trial had the significance attributed to it by the District Court in its October 31, 2001 opinion. *See Savino v. City of New York*, 2002 WL 24308, at *1 (S.D.N.Y. January 9, 2002). The Court stated:

> On cross-examination, Brooks testified that in the five minute period that Savino was alone in the room with the body, she could see the area where the handbag, purse and wallet were, and that she "didn't see him go in the bag." Def. Ex. GG at 507. On redirect examination, Brooks testified that she was not watching Savino for every second of those five minutes. *Id.* at 508. The redirect examination did not elicit testimony on whether Brooks took her eyes off the handbag, purse and wallet during that five minute period.

*Id.* at *2. On this basis, the Court held that "Brooks' testimony does not, therefore, alter [its] previous conclusion that genuine issues of material fact remain with respect to probable cause." *Id.*

The Court then summarily denied the remainder of the arguments raised by defendants in their motion for reconsideration. Finally, it determined that "[s]ince neither party has argued that Wilson does not have policy-making authority with respect to investigations of wrongdoing by City employees such that his actions may subject the City to liability under § 1983, a genuine issue of material fact remains as to [whether the City of New York can be held liable for his actions]." *Id.* at *3.

The defendants timely filed this appeal of both the October 31, 2001 and the January 9, 2002 District Court orders.[5] In the

---

5. Specifically, defendants challenge all of the District Court's rulings against them except

for its conclusion that Commissioner Wilson had policymaking authority sufficient to sub-

absence of a final judgment, plaintiffs have not cross-appealed those parts of the District Court's order ruling in favor of defendants. *See, e.g., Davidson v. Chestnut,* 193 F.3d 144, 151 (2d Cir.1999) (holding that, in the course of reviewing an interlocutory ruling on qualified immunity, we may not review unrelated rulings that are not themselves subject to interlocutory review).

## II. DISCUSSION

 It is well established that "[w]e review *de novo* a district court's denial of summary judgment on qualified immunity grounds." *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir.2003).

Federal Rule of Civil Procedure 56(c) requires a court to grant a motion for summary judgment whenever it determines that there is no genuine issue of material fact to be tried. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is required to resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. We have had many occasions to recite the basic rule enumerated by the Supreme Court that, in order to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate, therefore, if the evidence presented by the nonmoving party "is merely colorable, or is not significantly probative," *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted), or if it is based purely on "conjecture or surmise," *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

As with the standard for summary judgment, the standard governing the qualified immunity defense is well-settled. We have only recently recalled that, "[u]nder the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003). Accordingly, defendants are entitled to summary judgment unless, in response to defendants' motion for summary judgment, Savino has submitted evidence sufficient to establish that objectively reasonable persons in the defendants' position would have known that their conduct violated Savino's rights.

 Because qualified immunity is an immunity from suit—not merely an immunity from judgment—assertions of qualified immunity should be addressed as early as possible in the judicial process. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Mitchell v. Forsyth,* 472 U.S. 511, 527–29, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Accordingly, under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' notwithstanding the absence of a final judgment." *Mitchell,* 472 U.S. at 530, 105 S.Ct. 2806. In considering such appeals, we may exercise

---

ject the City to liability in circumstances such as those alleged here.

pendent jurisdiction over issues that are not ordinarily subject to interlocutory review whenever (1) they are 'inextricably intertwined' with the determination of qualified immunity or (2) their resolution is 'necessary to ensure meaningful review' of the district court's ruling on qualified immunity. *See Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).

■ Although we lack jurisdiction to resolve material issues of fact on an interlocutory appeal, *Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), we have jurisdiction over interlocutory appeals of a district court's denial of qualified immunity whenever the defendant is willing to accept plaintiff's version of the facts for purposes of the appeal, *see Behrens v. Pelletier,* 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996). "Even where the lower court rules that material disputes of fact preclude summary judgment on qualified immunity, we may still exercise interlocutory jurisdiction if the defendant ... contends that he is entitled to qualified immunity even under plaintiff's version of the facts." *Tierney v. Davidson,* 133 F.3d 189, 194 (2d Cir.1998).[6]

Accordingly, for purposes of this appeal, we will analyze the facts in the light most favorable to Savino, reviewing *de novo* the legal question of whether the disputed facts identified by the District Court are,

in fact, material. *See, e.g., Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992).

### A. *Malicious Prosecution Claim*

■ Under New York law, "[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983). Liability for the tort of malicious prosecution also gives rise to liability under 42 U.S.C. § 1983. *See, e.g., Cook v. Sheldon,* 41 F.3d 73, 77–79 (1994).

■ As the District Court properly noted, the existence of probable cause is a complete defense to a claim of malicious prosecution in New York. *See Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d at 455 (discussing malicious prosecution claims). The District Court also correctly recognized that, under New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Colon,* 60 N.Y.2d at 83, 468 N.Y.S.2d at 456.

The District Court held that, even though Savino was indicted for stealing the ring, he adequately rebutted the presumption of probable cause arising from his indictment because a reasonable jury could find that (1) defendants had acted in bad

---

**6.** In the past, we have held that "[interlocutory] appellate jurisdiction is not conferred on us by reason of [a defendant's] contention that probable cause was established as a matter of law because of the principles of New York law that ... a grand jury indictment ... create[s] a presumption of probable cause." *Marshall v. Sullivan,* 105 F.3d 47, 54–55 (2d Cir.1996) (concluding that, where genuine issues of material fact exist, the presumption of probable cause triggered by an indictment

may not confer an immunity from suit). Nevertheless, in this case we have jurisdiction to review the District Court's ruling as to the existence of probable cause, including aspects of that ruling pertaining to the presumption of probable cause triggered by Savino's indictment, because these matters are inextricably intertwined with issues of qualified immunity. *See, e.g., Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748, 757–58 (2d Cir. 1998).

faith by withholding exculpatory evidence from the prosecuting attorney, Assistant District Attorney Joseph Sullivan ("ADA Sullivan"), and (2) if this evidence *had* been presented to the grand jury, Savino would not have been indicted. *Savino*, 168 F.Supp.2d at 178–79. In particular, the Court concluded, based upon Sergeant Brooks' testimony at Savino's criminal trial, that Sergeant Brooks had observed Savino the *entire time* Savino was alone in the room, and that she did not see him take the ring. *Id.* at 178. The Court then apparently assumed that all of the defendants knew that Sergeant Brooks had been observing Savino throughout this period *and* that they had intentionally misled the grand jury by shielding this information from ADA Sullivan. *Id.* at 178–79. In its January 9, 2002 opinion and order on reconsideration, however, the District Court conceded that "Brooks testified that she was not watching Savino for every second of those five minutes," but it upheld its earlier decision on the ground that Sergeant Brooks did not expressly deny watching the handbag, purse, and wallet throughout that time period. *Savino*, 2002 WL 24308, at *2.

 We believe the District Court's analysis is flawed because it apparently ignored the rule that it is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment. *See, e.g., Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (holding that, under New York law, "the *plaintiff must establish* that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith" (internal quotation marks omitted) (emphasis added)). In order to survive a motion for summary judgment on the malicious prosecution claim, Savino must have submitted evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith. The District Court erroneously shifted this burden to defendants by permitting Savino to rebut the presumption of probable cause with mere "conjecture" and "surmise" that his indictment was procured as a result of conduct undertaken by the defendants in bad faith. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991).

Even if Sergeant Brooks had been watching the crime scene the entire time that Savino was alone in the room, which is highly doubtful,[7] Savino has adduced no evidence, circumstantial or otherwise, that prior to Sergeant Brooks' testimony at trial, any other officers knew what she had or had not observed. The District Court glossed over this problem with respect to

---

**7.** Although we lack jurisdiction to review the District Court's factual findings, we note that the District Court seems to have mischaracterized Sergeant Brook's testimony. Despite the District Court's finding to the contrary, Sergeant Brooks *never* testified that she was observing either Savino *or the handbag, purse, and wallet* during the entire five-minute period when Savino was alone at the crime scene. It is true that Sergeant Brooks stated on cross-examination that, while Savino was alone in the hotel room, she had a "line of sight" into the room, she "could see the area where the handbag, purse, and wallet were," and she did not see Savino take the ring. Trial Tr., Jan. 21, 1997, at 507. But, while

Sergeant Brooks admitted to "looking ... inside the room" during these five minutes, *id.* at 506, she never stated that she kept her eyes on what was happening in the room for that entire time, *id.* at 506–08. In fact, she testified on redirect examination that, during this period, she had a conversation with another officer who was also outside of the room, *id.* at 508, making it highly unlikely that her gaze was constantly affixed to the part of the hotel room where the handbag, purse, and wallet were located. Accordingly, we do not believe that Sergeant Brooks' testimony had the exculpatory value attributed to it by Savino and the District Court.

the police-officer defendants, simply presuming that they knew Sergeant Brooks had been watching the handbag, purse, and wallet and then finding that "[i]t is unclear from the record whether the police defendants disclosed Brooks' information to [ADA Sullivan] or the DOI." *Savino,* 168 F.Supp.2d at 178. With respect to the DOI defendants, the District Court determined that, although "[t]he record is unclear as to whether Sturcken, Perez and Wilson knew about Brooks' [observations]" before they presented the results of their investigation to ADA Sullivan, such knowledge could be presumed based upon the collective knowledge doctrine. *Id.* at 178–79.

■■■ The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, "where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all." *Illinois v. Andreas,* 463 U.S. 765, 772 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). We have observed that "[this] rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *United States v. Valez,* 796 F.2d 24, 28 (2d Cir.1986). Accordingly, the doctrine · has traditionally been applied to *assist* officers in establishing probable cause—not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge. In fact, in *Valez,* we clearly stated that this doctrine *cannot* be used to impute to an officer "facts known to some [other] members of the police force which exonerate an arrestee." *Id.* In addition to our holding in *Valez,* common sense dictates that the collective knowledge doctrine cannot be applied in the circumstances presented here: Certainly, one cannot establish that an officer engaged in "conduct undertaken in bad faith," *Colon,* 60 N.Y.2d at 83, 468 N.Y.S.2d at 456, 455 N.E.2d 1248, simply by presenting evidence of another officer's knowledge or state of mind. Accordingly, the District Court erred by invoking the collective knowledge doctrine in the circumstances presented here.

■■■ In any event, even if other officers *were* aware that Sergeant Brooks had observed Savino continuously while he was alone in the room and that she did not see him take the ring, Savino has presented no evidence that this information was intentionally withheld from ADA Sullivan. As an initial matter, ADA Sullivan personally interviewed Sergeant Brooks before Savino's indictment. Aff. of Joseph J. Sullivan, Aug. 14, 1997, at 2–3, ¶¶ 4, 7. If Sergeant Brooks actually had been looking into the hotel room the entire time Savino was alone in that room, and if she had indeed revealed this information to the other officers, they logically could have assumed that Sergeant Brooks herself would reveal this information during her interview with ADA Sullivan. Accordingly, their failure to take it upon themselves to present to ADA Sullivan the observations of another officer (Sergeant Brooks) would have been entirely reasonable, and certainly not evidence of bad faith.[8]

**8.** Moreover, ADA Sullivan testified that he does not remember Sergeant Brooks telling him during their interview that she was watching Savino "the *whole* time he was in the room [alone]" (emphasis added), but recalls that she may have told him that she was standing in the doorway or glancing into the room during *some* of the five-minute period that Savino was in the hotel room by himself. Tr. of Sullivan Deposition, Dec. 20, 1999, at 117–18. This evidence is entirely consistent with Brooks' trial testimony, which, as the

Finally, ADA Sullivan—who had the discretion and authority to decide what evidence to present to the grand jury—was under no duty to present every item of arguably exculpatory evidence in seeking an indictment. *See, e.g., People v. Mitchell,* 82 N.Y.2d 509, 515, 605 N.Y.S.2d 655, 658, 626 N.E.2d 630 (1993) ("[T]he People maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused." (citation omitted)). Accordingly, even if we assume for the sake of argument that Sergeant Brooks was watching the bag the entire time Savino was alone in the room and that ADA Sullivan was made aware of her observations, his decision not to present this information to the grand jury would not amount to conduct undertaken in bad faith.

In the absence of sufficient evidence that defendants—or any other officers—acted in bad faith, no reasonable juror could find that Savino has overcome the presumption of probable cause that arises from his indictment. Because the existence of probable cause to arrest is a complete defense to a claim of malicious prosecution, defendants were entitled to summary judgment on this claim and the related § 1983 claim. Defendants are also entitled to summary judgment on qualified immunity grounds with respect to these claims. *See, e.g., Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003) (stating that an officer is entitled to immunity from suit if his conduct did not violate plaintiff's clearly established rights).

### B. *False Arrest Claim*

■ To state a claim for false arrest under New York law, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard,* 25 F.3d at 102. As with malicious prosecution, liability for false arrest also gives rise to liability under 42 U.S.C. § 1983. *See Cook v. Sheldon,* 41 F.3d 73, 77–79 (1994).

The District Court analyzed Savino's malicious prosecution and false arrest claims together because it believed that the presumption of probable cause arising from Savino's indictment was applicable to both claims. *See Savino,* 168 F.Supp.2d at 178. But the New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment "applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions." *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975).

Nevertheless, the defendants are entitled to qualified immunity on Savino's false arrest claim and the related § 1983 claim. As noted above, the District Court has already granted summary judgment to the police-officer defendants (Gargan, Dowd, Brooks, Bartholomew and Baner) with respect to the false arrest claims because they did not " 'affirmatively instigate[ ] or procure[ ] [Savino's] arrest,' " *id.* at 177 (quoting *King v. Crossland Savings Bank,* 111 F.3d 251, 256–57 (2d Cir.1997)). We conclude that the DOI defendants and the City are also entitled to summary judgment on the claim of false arrest because, even accepting Savino's version of the facts, the DOI defendants did not act unreasonably in securing his arrest. *See, e.g., Mandell,* 316 F.3d at 385 ("Under the doctrine of qualified immunity, a govern-

District Court ultimately found, in no way indicates that she was watching Savino the *entire* time he was alone in the room. 2002 WL 24308, at *2.

ment official performing discretionary functions is shielded from liability for civil damages ... if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights.").

■■■ The defendants do not dispute that Savino was, in fact, arrested. Accordingly, the only question for us to consider is whether Savino's arrest was "privileged," or "justified." *See, e.g., Bernard,* 25 F.3d at 102; *Broughton,* 37 N.Y.2d at 458, 373 N.Y.S.2d 87, 335 N.E.2d 310. The New York Court of Appeals has made clear that "[j]ustification may be established by showing that the arrest was based on probable cause," *Broughton,* 37 N.Y.2d at 458, 373 N.Y.S.2d 87, 335 N.E.2d 310, but that the defendants bear the burden of proving that probable cause existed for the plaintiff's arrest, *id.* Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000).

At the time that Savino was arrested, the DOI defendants knew that the ring had disappeared from the hotel room and that it had turned up in Savino's home. Although Savino claimed that he found the ring in a bottle of pills that he took with him from the crime scene for analysis, the victim's suicide note indicated that the ring was in her wallet, and Officers Gargan and Dowd confirmed that they had observed the ring in the wallet when they arrived at the scene. Furthermore, while Savino denied that he was ever alone in the room with the victim and her property, five separate police officers had informed the DOI defendants that Savino had asked them to leave him alone in the room and that he

was in fact left alone in the room for approximately five minutes.

Savino argues that the DOI defendants lacked probable cause for his arrest because they already had been informed of Sergeant Brooks' observations and, therefore, they knew that he could not have taken the ring intentionally. But even if, as Savino alleges, the DOI officers were told that Sergeant Brooks had been observing the handbag and wallet while Savino was alone in the room and that she did not see him take the ring, this knowledge would not have been sufficient to negate probable cause. At most, Sergeant Brooks' alleged observations indicate that Savino did not take the ring from the wallet *while he was alone in the room;* they do not negate the possibility that Savino removed the ring from the wallet while the other officers were in the room but were not watching him. At the time of Savino's arrest, the DOI officers had evidence that a ring that had been in the victim's wallet inexplicably ended up in Savino's home. This evidence alone created a sufficient basis for a reasonable officer to believe that Savino had stolen the ring and, therefore, that probable cause existed for his arrest. *See Martinez,* 202 F.3d at 634. Accordingly, the DOI defendants and the City are entitled to qualified immunity on Savino's false arrest claim.

## C. *Abuse-of-process Claim*

■■■ In New York, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994). Malicious abuse of criminal

process also supports liability under § 1983. *Id.*

Savino's abuse-of-process claim rests on his allegation that, in instigating the criminal investigation that led to his indictment, defendants were retaliating against him for the embarrassment caused by the media reports of his allegedly exorbitant overtime pay. The District Court concluded that "[a] reasonable jury could infer from the timing of defendants' actions that the overtime issue was the motivating factor in the prosecution." *Savino,* 168 F.Supp.2d at 179. It then determined that "although abuse of process ... does not require that probable cause be lacking ... a lack of probable cause creates an inference of malice, supporting the collateral objective element" of this claim. *Id.* (citation omitted). Because it believed that Savino "ha[d] raised genuine issues of fact with respect to probable cause," the District Court denied summary judgment to all of the defendants with respect to the abuse-of-process claim. *Id.*

But, as we concluded above, the District Court erred in holding that genuine issues of material fact existed with respect to probable cause. Accordingly, it also erred in relying on a lack of probable cause to infer that, in securing Savino's arrest, defendants acted with malice or with a collateral objective that was outside the legitimate ends of the legal process.

■■■ With respect to the police-officer defendants, Savino has submitted no evidence whatsoever to indicate that they abused the legal process: As the District Court itself noted, these defendants were merely witnesses to Savino's alleged crime and did not "affirmatively instigate[ ] or procure[ ] [Savino's] arrest." *Savino,* 168 F.Supp.2d 172 (internal quotation marks omitted). Because there is no evidence

that any of the police-officer defendants engaged in conduct for the purpose of promoting or facilitating Savino's arrest and prosecution, the District Court erred in denying the motion for summary judgment on the abuse-of-process claim with respect to these defendants.

■■■ Savino has also failed to state a claim for abuse of process against the DOI defendants. The District Court determined that "[a] reasonable jury could infer from the timing of [the DOI] defendants' actions that the overtime issue was the *motivating factor* in the prosecution." *Id.* (emphasis added). But the New York Court of Appeals has made clear that "[a] malicious motive alone ... does not give rise to a cause of action for abuse of process." *Curiano v. Suozzi,* 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 468–69, 469 N.E.2d 1324 (1984); *see also Hauser v. Bartow,* 273 N.Y. 370, 374, 7 N.E.2d 268 (1937) (finding no abuse of process because "whatever may have been respondent's motives, she used the process of the court for the purpose for which the law created it"). In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action. *See Dean v. Kochendorfer,* 237 N.Y. 384, 143 N.E. 229 (1924) (distinguishing between improper motive and improper purpose and concluding that improper purpose is necessary to make out an abuse-of-process claim—improper motive is not enough). Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.

In his complaint, Savino alleges that his investigation and arrest by the DOI defen-

dants "was solely motivated to seek vindication for the [City's] great political embarrassment and humiliation for allowing plaintiff to be the highest paid [city] employee through his overtime earning which was widely reported in the news media for several years and to punish plaintiff for his lawfully and properly earned overtime compensation." Compl. at ¶ 217. Although this passage does allege that the DOI defendants acted with an improper *motive,* Savino has not presented any evidence that they had an ulterior *purpose* or *objective* in facilitating his prosecution. Accordingly, Savino has failed to state a claim for abuse of process against the DOI defendants and the City, and they are entitled to summary judgment on the abuse of process claim. And because defendants are entitled to summary judgment on the merits of the abuse of process claim, they are also entitled to summary judgment on qualified immunity grounds with respect to this claim. *See, e.g., Mandell,* 316 F.3d at 385.

### III. CONCLUSION

For the reasons stated above, we hold that defendants are entitled to summary judgment on qualified immunity grounds with respect to Savino's claims for malicious prosecution, false arrest and abuse of process, as well as his § 1983 claim based on these state-law causes of action. Accordingly, the District Court erred by denying defendants' motion for summary judgment with respect to these claims.[9]

The order of the District Court is reversed and the cause is remanded to the District Court with instructions to enter judgment in favor of defendants.

---

9. Because Ernestine Savino's claims for loss of services and society are entirely derivative of her husband's claims, defendants are also entitled to summary judgment against her.