18-1277
*ED Capital, LLC v. Bloomfield Inv. Res. Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of November, two thousand eighteen.

Present:
> AMALYA L. KEARSE,
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> *Circuit Judges*.

_____

ED CAPITAL, LLC, ED CAPITAL MANAGEMENT, LLC,

　　　　　　*Plaintiffs-Appellants*,

　　　　v.　　　　　　　　　　　　　　　　　18-1277

BLOOMFIELD INVESTMENT RESOURCES CORP., REUBEN BROTHERS RESOURCES GROUP, RB RESOURCES LIMITED, REUBEN BROTHERS LIMITED,

　　　　　　*Defendants-Appellees*.

_____

For Plaintiffs-Appellants:　　　　　RICHARD J.L. LOMUSCIO, Riker Danzig Scherer Hyland & Perretti LLP, New York, NY.

For Defendants-Appellees:　　　　　BRIAN A. SUTHERLAND, STEVEN COOPER, C. NEIL GRAY, Reed Smith LLP, New York, NY.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Marrero, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants ED Capital, LLC and ED Capital Management, LLC (collectively, "ED Capital") appeal from an April 3, 2018 judgment by the U.S. District Court for the Southern District of New York (Marrero, *J.*), dismissing ED Capital's First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted. The FAC alleges breach of contract, indemnification, promissory estoppel, abuse of process, prima facie tort, and prejudgment attachment claims against Defendants-Appellees Bloomfield Investment Resources Corp., Reuben Brothers Resources Group, RB Resources Limited, and Reuben Brothers Limited (collectively, "Bloomfield").

We review de novo a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *See Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.    Background

ED Capital manages two investment funds incorporated in the Cayman Islands, Synergy Hybrid Fund Ltd. and Synergy Hybrid Feeder Fund Ltd. ("Synergy funds").[1] On November 4, 2011, Bloomfield executed the Synergy Hybrid Fund Subscription Agreement ("Subscription Agreement") which, among other things, incorporated the Synergy Hybrid Fund, Ltd. Confidential Private Placement Memorandum ("Memorandum"). In the Subscription Agreement, Bloomfield agreed to "subscribe to as many of [Synergy Hybrid Fund Ltd.'s] Shares as may be purchased for U.S. $25m," and these shares were in fact purchased on the execution date. A-291. The Subscription Agreement and Memorandum govern Bloomfield's subscription to the Synergy funds. Neither ED Capital nor Bloomfield dispute that the only parties to the Subscription Agreement were the Synergy funds and Bloomfield.

In June 2013, Bloomfield—apparently dissatisfied with the performance of the Synergy funds over the previous year and a half—began pressuring ED Capital to return Bloomfield's $25 million. Bloomfield claimed that its transfer of money was not an investment, as characterized in the Subscription Agreement and Memorandum, but rather a *loan* designed "to bolster the balance sheet" of a company owned by the Synergy funds, United Meat Group ("UMG"), "as part of a scheme to attract other investors." A-297. ED Capital, for its part, insisted that the $25 million had been an investment that was subject to the redemption provisions laid out in the Subscription Agreement, which require, among other things, 90 days' written notice of redemption requests. Bloomfield never requested redemption pursuant to those provisions.

---

[1] The Court accepts ED Capital's allegations in the FAC as true at this stage of litigation. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 97 n.1 (2d Cir. 2015). We draw upon them here as necessary to explain the basis for our conclusion that the FAC was properly dismissed.

3

On June 16, 2015, Bloomfield initiated prejudgment attachment proceedings against UMG in the Netherlands, where UMG had funds in a bank account. The Dutch court attached $15 million, releasing $3.3 million some time later so UMG could make a bond payment. However, because of the attachment, UMG was low on funds and ended up making its bond payment late, incurring $18,000 in additional interest fees and over $100,000 in subsequent legal fees. Bloomfield then filed a lawsuit against UMG on August 11, 2015, again in the Netherlands, seeking the full $25 million. According to ED Capital, in the course of the Dutch suits, Bloomfield issued broad and harassing subpoenas in order to harm ED Capital. These suits are still in progress; the remaining $11.7 million of the attachment is still frozen. As a result of the Dutch suits and the allegations therein, at least six investors "refused to do business with ED Capital." A-304. ED Capital further alleges that the suits caused UMG to miss a bond payment, which could result in the company's failure and the loss of hundreds of millions of dollars in value for UMG, the Synergy funds, and ED Capital.

## II.    Discussion

ED Capital first argues that it has stated claims for breach of contract and indemnification pursuant to Cayman Islands law because the FAC alleges that a "separate collateral agreement" existed that allows ED Capital, as a non-signatory to the Subscription Agreement, to enforce the contract against Bloomfield.[2] We are not persuaded. Under the collateral-contract doctrine, applicable in the Cayman Islands, "proof of a second (usu[ally] oral) agreement will not be excluded under the parol-evidence rule if the oral agreement is independent of and not inconsistent with the written contract, and if the information in the oral agreement would not ordinarily be

---

[2]  Both parties agree that the breach of contract and indemnification claims are governed by Cayman Islands law.

expected to be included in the written contract." *Collateral-Contract Doctrine*, Black's Law Dictionary (10th ed. 2014). Here, we conclude that even if ED Capital has adequately alleged a separate agreement, the terms of this alleged agreement would ordinarily be expected to be included in the Subscription Agreement itself. The Subscription Agreement is quite detailed in its terms—for example, it describes precisely what sort of entities are allowed to become subscribers, which individuals are entitled to act on behalf of the subscriber, when documents related to the funds can be requested, and which law governs the contract. It also explicitly lists, in the first paragraph of the agreement, the parties to the contract. If Bloomfield (or, indeed, the Synergy funds) intended to give some other party—like ED Capital—the right to enforce the provisions of the Subscription Agreement, one would ordinarily expect such terms to be included in the otherwise highly detailed agreement. As a result, the alleged separate agreement does not qualify as a collateral contract.

Next, ED Capital argues that it has stated a claim for promissory estoppel. Under New York law, promissory estoppel requires "(1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel by reason of his reliance."[3] *PHL Variable Ins. Co. v. Mahler*, 321 F. Supp. 3d 392, 401 (E.D.N.Y. 2018) (quoting *Ripple's of Clearview, Inc. v. Le Havre Associates*, 452 N.Y.S.2d 447, 449 (2d Dep't 1982)). ED Capital has not adequately alleged the second element. As the district court determined, all the promises that ED Capital seeks to enforce were made in the Subscription Agreement, by Bloomfield, to the Synergy funds. Thus, ED Capital was

---

[3] There was some dispute below as to whether Cayman Islands law or New York law applies to ED Capital's promissory estoppel claim. The district court determined that even if New York law applied—as ED Capital argued that it did—the claim still failed. On appeal, both parties assume New York law governs, as do we.

5

not the "party to whom the promise [was] made"—a fact explicitly noted in the FAC itself. A-309–11 (stating that ED Capital entities "are not parties to the Subscription Agreement and Memorandum"). ED Capital's promissory estoppel claim cannot be maintained under these circumstances. *Cf., e.g.*, *BNP Paribas Mortg. Corp. v. Bank of America*, 949 F. Supp. 2d 486, 516 (S.D.N.Y. 2013) (rejecting non-signatory's promissory estoppel claim where "sophisticated parties [had] entered into a bargained for contract," because the "terms of the contract . . . are not 'clear and unambiguous' promises" to the non-signatory).

ED Capital also argues that it has stated claims for abuse of process and prima facie tort, based upon Bloomfield's allegedly harmful actions of initiating the Dutch suits and issuing "overbroad and harassing subpoenas." A-306. However, an element of both abuse of process and prima facie tort claims is an intent to do harm *without excuse or justification*. *See Backer v. Cooperatieve Rabobank U.A.*, 2018 WL 4500878, at *6 (S.D.N.Y. Sept. 19, 2018) (citing *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)) (abuse of process); *Fung-Schwartz v. Cerner Corp.*, 2018 WL 4386087, at *10 (S.D.N.Y. Sept. 13, 2018) (citing *Curiano v. Suozzi*, 469 N.E.2d 1324, 1327 (N.Y. 1984)) (prima facie tort). Here, the FAC alleges that Bloomfield's actions were "all [taken] in an effort to pressure [ED Capital] to buy-back Bloomfield's investment." A-306. Thus, even if—as ED Capital now argues on appeal—Bloomfield did have some "malevolence beyond [its] desire to obtain the return" of its investment, or some "collateral and improper purpose to harm [ED Capital]," App. Br. 31–33, ED Capital's claims still fail, because the FAC alleges a motivating force and economic justification *besides* that malevolence: the return of Bloomfield's $25 million.[4]

---

[4] Because we conclude that ED Capital has not stated any claims upon which relief can be granted, ED Capital's claim for prejudgment attachment fails as well. *See Capital Ventures Int'l v. Republic of*

Finally, ED Capital argues that the district court erred in not *sua sponte* granting ED Capital leave to amend the FAC. In general, courts should "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "no court can be said to have erred in failing to grant a request that was not made." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011); *see also Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249–50 (2d Cir. 2004) (noting that the "contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous"). Here, ED Capital never requested leave to amend the FAC. Therefore, the district court did not err in declining to *sua sponte* grant leave to amend.

*       *       *

We have considered ED Capital's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

---

*Argentina*, 443 F.3d 214, 219 (2d Cir. 2006).