LINDSAY, Magistrate Judge:
Plaintiff Robert A. Mazzone, Jr. ("Plaintiff") brings this action under 42 U.S.C. § 1983 (" Section 1983") against defendants Town of Southampton (the "Town"); Town Code Enforcement Officers Donald P. Kauth ("Officer Kauth"), Ricardo Larios ("Officer Larios"), Kenneth Glogg ("Officer Glogg") and Michael Chih ("Officer Chih"); and Town Fire Code Marshal John J. Rankin ("Marshall Rankin") (collectively, "Defendants") alleging, inter alia , that Defendants maliciously charged him with a multitude of violations and/or misdemeanors. Before the Court, on referral from District Judge Bianco, is the motion by Defendants to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, the Court respectfully recommends that Defendants' motion be granted in part and denied in part.
BACKGROUND
The following facts are drawn from the complaint, exhibits attached thereto, and matters of which judicial notice may be taken, and with the exception of the latter category, are accepted as true for purposes of the instant motion.[1] Samuels v. Air Transp. Local 504 , 992 F.2d 12, 15 (2d Cir. 1993).
Plaintiff is a "real estate professional" with Hampton Sales and Rentals and assists consumers in finding rentals in the Town. Compl. ¶ 20. In an 82-page complaint, inclusive of exhibits, Plaintiff alleges that the Defendants maliciously targeted him for years by filing several charges and misdemeanors against him related to properties he rented. Plaintiff alleges that Defendants pursued these charges without probable cause and despite awareness of case law that "doomed any success on the charges," instead deciding to "sort it out later." Id. ¶¶ 19, 35 and page 12. Plaintiff claims that he was singled out and targeted because he rented houses to "hard-working Hispanic immigrants with low-paying jobs." Id. ¶ 86. The Court discusses the charges below.
I. The 2012 Charges
Plaintiff alleges that in 2012, he was served with 61 charges and given appearance *45 tickets directing his attendance in the Town's Justice Court in order to avoid arrest. Id. ¶ 36. The only details regarding the charges are found in a Certificate of Disposition, which is attached as Exhibit 1 to the complaint. It lists charges such as "property maintenance/litter," "carbon monoxide alarm required," "smoke detector required," "area for sleeping purposes," "change of use," "rental permit required," "electrical equipment installation," "bldg. permit required," and "no required barrier for pool." Id. Ex. 1.
The 61 charges were docketed in four separate cases and reassigned to the Riverhead Town Justice Court after all four Town Justices recused themselves. Id. ¶¶ 37-38. After multiple appearances by Plaintiff, Justice Smith of the Riverhead Town Justice Court dismissed all 61 charges. Id. ¶ 39. Fifty-nine charges were dismissed as a result of Plaintiff's motions to dismiss. Id. The remaining two charges were terminated after the Town was unable to proceed to trial. Id. ¶ 43. The Certificate of Disposition indicates that all of these charges were dismissed. Id. ¶¶ 16, 56 and Ex. 1.
According to Plaintiff, Justice Smith's first decision was issued on May 5, 2015 in one of the four cases. Id. ¶ 40. Even though it was apparent from this decision that the remaining charges in the three other cases were without merit, Defendants did not seek to discontinue these charges. Id. ¶¶ 40-41. Specifically, Plaintiff alleges that the Town both lacked any evidence that Plaintiff had an ownership interest in the properties at issue and failed to retain any exculpatory information as required. Id. ¶ 44.
II. The 2013 Charges
Plaintiff alleges that in December 2013, he was charged by Officer Chih with two misdemeanor offenses "pertaining to property maintenance matters, in a single docket for alleged violations of codes concerning a house on North Sea Road and its 'pool fence' and 'weeds.' " Id. ¶¶ 47, 54. Attached to the complaint as Exhibit 2 is a Certificate of Disposition regarding these charges indicating that the charges were for "no pool enclosure" and "prop maint/weeds." Id. Ex. 2. Plaintiff alleges that Chih charged him even though (1) he lacked probable cause to believe Plaintiff was liable because Chih based his complaints on a September 2013 inspection of the premises and had two months to investigate and determine that Plaintiff was not the homeowner; (2) Chih failed to provide Plaintiff with the required pre-prosecution notice pursuant to N.Y. Executive Law § 382(2) giving Plaintiff notice and an opportunity to cure; and (3) the factual allegations were patently insufficient to charge. Id. ¶¶ 50-54. After at least two court appearances, the charges were dismissed by Acting Town Justice Solomon in 2015, after motion practice. Id. ¶ 48. The Certificate of Disposition indicates that these two charges were dismissed. Id. ¶¶ 16, 49 and Ex. 2.
III. The 2015 Charges
Plaintiff alleges that in April 2015, Defendants launched a third set of charges against him despite the fact that Defendants know that all, or nearly all, of the previous charges filed against Plaintiff would be dismissed. Id. ¶¶ 58-60. More specifically, on April 22, 2015, Plaintiff was given an additional 22 appearance tickets written by Officers Larios and Glogg for alleged violations of Southampton Town Law § 270 -3(A) and (B), which prohibit (1) an owner from renting a dwelling without a valid rental permit; and (2) a person from occupying a rental property without a valid rental permit being issued for the dwelling. Id. ¶¶ 61, 68. Based on these *46 tickets, 21 separate criminal dockets were commenced on various dates in May 2015, at which time the accusatory instruments-unclassified misdemeanor informations-were filed with the Clerk of the Town Justice Court. Id. ¶ 63. As of the time of the complaint, these criminal actions were still pending before Justice Schiavoni, and Plaintiff faces a jail term of over 10 days per offense as well as substantial fines. Id. ¶¶ 67-68.
Plaintiff alleges that Officers Larios and Glogg knew or should have known that Plaintiff was neither the owner nor occupant of any of the 21 houses involved in the charges. Id. ¶ 72. Instead, Officers Larios and Glogg caused Plaintiff's liberty interests to be infringed by arresting him and maliciously prosecuting the 21 criminal charges. Id. ¶ 74. According to Plaintiff, he "was singled out and targeted because he assisted in renting houses to hard-working Hispanic immigrants with low-paying jobs," id. ¶ 86, and that "[s]uch selective treatment by these Defendants was based on impermissible considerations such as race, religion, national origin, gender, familial status, and the intent to inhibit and interfere with [Plaintiff's] exercise of his legal rights," id. ¶ 85; see also id. ¶¶ 75-77.
IV. Alleged Media Ride-Alongs
Lastly, Plaintiff alleges that Defendants' "media ride-alongs" are unconstitutional:
At one or more times during the days immediately before and/or around a pre-trial conference held before Justice Schiavoni on August 8, 2016 in connection with the trials of the 21 dockets ... both Glogg and Larios deliberately and intentionally reached out to a news and video crew of one or more local news channels for the purpose of authorizing the participation of such television news crew ... to participate in unconstitutional "media ride-along" inside certain homes occupied by immigrant Hispanic tenants who had sought [Plaintiff's] assistance in finding them rental housing.
Id. ¶ 107. Plaintiff alleges that "[b]y their actions, Glogg and Larios exposed the TOWN and themselves to the possibility of multiple lawsuits by occupants seeking compensatory damages for Fourth Amendment violations of their rights protected in their homes." Id. ¶ 112.
V. The Instant Action
Based on the foregoing, the complaint asserts four causes of action: (1) violation of Plaintiff's "and others" Fifth and Fourteenth Amendment rights to due process and equal protection; (2) violation of Plaintiff's "and others" Fourth and Fourteenth Amendment rights to property and liberty interests and equal protection; (3) federal malicious prosecution, federal false arrest, and federal malicious abuse of criminal process; and (4) a state law claim under New York Judiciary Law § 487. The complaint seeks compensatory and punitive damages as well as injunctive relief. Defendants filed their motion to dismiss on October 17, 2016, and the motion was fully briefed as of December 9, 2016. ECF Nos. 18-22, 24. Judge Bianco referred the motion to the undersigned on May 10, 2017.
DISCUSSION
I. Standard of Law
The Supreme Court clarified the appropriate pleading standard in Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937. Though "legal conclusions can provide *47 the framework of a complaint, they must be supported by factual allegations." Id. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." Id. at 678, 129 S.Ct. 1937 (citing Bell Atl. Corp. v. Twombly , 550 U.S. 544, 556-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted)).
II. Analysis
Plaintiff's claims for violations of their constitutional rights are cognizable under 42 U.S.C. § 1983, which provides procedures for redress for the deprivation of civil rights. In order to maintain a civil rights action under Section 1983, Plaintiff must allege two essential elements: (1) the Defendants acted under color of state law; and (2) as a result of the Defendants' actions, Plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See Cornejo v. Bell , 592 F.3d 121, 127 (2d Cir. 2010).
A. Counts I and II
Count I asserts a violation of Plaintiff's "and others" Fifth and Fourteenth Amendment rights to due process and equal protection. Count II asserts a violation of Plaintiff's "and others" Fourth and Fourteenth Amendment rights to property and liberty interests and equal protection. The Court addresses these claims below.
1. Plaintiff's Fifth Amendment Due Process Claim
To the extent Plaintiff asserts that his due process rights were violated under the Fifth Amendment, the Court respectfully reports and recommends that this claim be dismissed because the Due Process Clause of the "Fifth Amendment only applies to actions by the Federal Government," Castanza v. Town of Brookhaven , 700 F.Supp.2d 277, 288 (E.D.N.Y. 2010) (citing Dusenbery v. United States , 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ), and Plaintiff has not named the United States government or any agency or employee thereof as a defendant in this matter. See MacPherson v. Town of Southampton, No. 07-CV-3497, 2013 WL 6058202, at *16 (E.D.N.Y. Nov. 14, 2013) ("The Fifth Amendment governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors.") (emphasis in original) (citations and internal quotation marks omitted).
2. Plaintiff's Fourteenth Amendment Due Process Claim
To the extent Plaintiff's due process claims are being asserted under the Fourteenth Amendment, the Court recommends that they be dismissed as well as duplicative of Plaintiff's Fourth Amendment claims, which are set forth in Count III. Count I alleges that Defendants "deprived [Plaintiff] of his constitutional rights not to be falsely arrested and maliciously prosecuted without probable cause, and not to be repeatedly subjected to the continuation of criminal prosecution," Compl. ¶ 118, because Plaintiff "aided persons of a foreign national origin insofar as finding such persons dwellings to rent located within the Town's jurisdiction, id. ¶ 121. Count II alleges that Plaintiff's "liberty and property interests were transgressed"
*48 by multiple court appearances that he was required to make, interference with his business interests as a real estate professional, paying attorneys to defend the charges against him, and "reputational injuries" he suffered as a result of Defendants' investigative and prosecutorial conduct. Id. ¶ 129. Because Plaintiff's due process claims are premised upon the same factual allegations of false arrest, false imprisonment and abuse of process asserted in Count III's Fourth Amendment claims, the due process claims must be dismissed as duplicative. See Levantino v. Skala , 56 F.Supp.3d 191, 203 (E.D.N.Y. 2014) ("Plaintiff's procedural due process claim cannot be predicated upon the same factual basis as his Fourth Amendment false arrest and false imprisonment claims.") (collecting cases); see also Perry v. Kozuch , No. 14-cv-1026, 2017 WL 1025663, at *6 (D. Conn. Mar. 16, 2017) ("As a matter of law, [plaintiff] cannot bring a Fourteenth Amendment procedural due process claim based on facts that could support a Fourth Amendment false arrest or false imprisonment claim."). Similarly, to the extent Counts I and II assert a substantive due process claim, it too is subsumed in the Fourth Amendment claim and should be dismissed. See Jackson ex rel. Jackson v. Suffolk Cnty. , 87 F.Supp.3d 386, 399 (E.D.N.Y. 2015) ("Because the Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest, false imprisonment, or malicious prosecution, plaintiffs cannot state a substantive due process claim against defendants based on such conduct.").
Insofar as Plaintiff bases his due process claim on a failure to investigate, see , e.g., Compl. ¶ 119, it too is subject to dismissal as "allegations of a failure to investigate do not create an independent due process claim, but instead are properly regarded as part of plaintiff's false arrest and malicious prosecution claims." Blake v. Race , 487 F.Supp.2d 187, 212 n.18 (E.D.N.Y 2007) ; see also Schweitzer v. Brunstein , No. 16-CV-1172, 2016 WL 4203482, at *2 (E.D.N.Y. Aug. 9, 2016) (noting that there is no constitutional right to an adequate investigation").
Lastly, to the extent Plaintiff's due process claim is based on Defendants' alleged failure to serve Plaintiff with notice and an opportunity to cure, Plaintiff fails to state a claim. The complaint alleges that with regard to the two charges made on December 5, 2013 pertaining to property maintenance matters concerning a house on North Sea Road and its pool fence and weeds, Defendants failed to serve Plaintiff with a notice of violation and a reasonable time period to cure. Compl. ¶ 50. "In order to assert a violation of procedural due process rights, a plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.' " Jones v. County of Suffolk , 236 F.Supp.3d 688, 694 (E.D.N.Y. 2017) (quoting Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington , 31 F.3d 1191, 1194 (2d Cir. 1994) ). "Thus, a claimed violation of procedural due process involves a two-step analysis: (1) the court examines whether the [government] deprived plaintiff of a constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate." Id. (citing Shakur v. Selsky , 391 F.3d 106, 118 (2d Cir. 2004) ). Defendants argue that Plaintiff fails to allege a protected property interest because the decision to serve notice and an opportunity to cure is a matter that falls within the discretion of the Town. The Court agrees.
*49 In order "to hold a legally cognizable property-type interest in a government benefit, an applicant 'must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " Colson ex rel. Colson v. Sillman , 35 F.3d 106, 108 (2d Cir. 1994) (quoting Board of Regents v. Roth , 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ); see also Town of Castle Rock v. Gonzales , 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.") (citing Kentucky Dep't of Corrections v. Thompson , 490 U.S. 454, 462-63, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) ; Macera v. Vill. Bd. of Ilion , No. 6:16-CV-0668, 2017 WL 1194236, at *5 (N.D.N.Y. Mar. 30, 2017) ("[A]n individual does not have an interest in a Town's enforcement of discretionary [zoning] codes.") (citation and internal quotation marks omitted). Here, New York Executive Law § 382(2) provides that notice and an opportunity to cure is not required to fine or imprison specified individuals who knowingly violate building codes, including any owner or an owner's agent. N.Y. Exec. Law § 382(2). The complaint does not specifically allege what Plaintiff's relationship is to the property at issue, but there are allegations indicating that, at the very least, Plaintiff acted as an agent of the owner.[2] Additionally, the New York regulations provide as follows:
Nothing in this section shall be construed as requiring an Authority Having Jurisdiction to issue an Order to Remedy in a given situation where violations of the Uniform Code are found to exist if, in the judgment of the Authority Having Jurisdiction, such violations can be addressed adequately by the use of other enforcement tools or by other means.
19 N.Y.C.R.R. § 1203.5(g). "[O]ther enforcement tools" or "other means" specifically include the issuance of "appearance tickets." Id. § 1203.5(g)(2). Here, Defendants issued Plaintiff two appearance tickets for the 2013 violations.[3] See ECF No. 18-1. Because it was a discretionary decision on the Town's part to issue an appearance ticket where violations were found to have existed[4] rather than providing Plaintiff with an opportunity to cure, Plaintiff cannot establish that he has a protected property interest in an order to remedy. Accordingly, the Court reports and recommends that Plaintiff's Fourteenth Amendment due process claims be dismissed.[5]
3. Plaintiff's Fourteenth Amendment Equal Protection Claim
The complaint alleges that Plaintiff "has been singled out and selectively treated *50 unfavorably ... when compared to other real estate professionals similarly situated" and that there is "no lawful, rational basis for Defendants' selective treatment of [Plaintiff]." Compl. ¶ 83. The complaint further alleges that "[n]o other real estate professional has been so scrutinized, not been issued so many appearance tickets requiring a criminal defense." Id. ¶ 84. Plaintiff, on the other hand, "has been issued 97 appearance tickets from 2008 to date [and] ... prevailed in all of them in the Justice Courts but only after having his liberty interests constrained and his property interests transgressed by repeatedly paying for his defenses." Id. The complaint further alleges that Plaintiff was "singled out and targeted because he assisted in renting houses to hard-working Hispanic immigrants with low-paying jobs," id. ¶ 86, and that "[s]uch selective treatment by these Defendants was based on impermissible considerations such as race, religion, national origin, gender, familial status, and the intent to inhibit and interfere with [Plaintiff's] exercise of his legal rights," id. ¶ 85.
The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. City of Cleburne v. Cleburne Living Ctr., Inc. , 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [courts] have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." Harlen Assocs. v. Inc. Vill. of Mineola , 273 F.3d 494, 499 (2d Cir, 2001). Here, Plaintiff does not claim to be a member of a constitutionally protected class; rather, he alleges that he was singled out because he assisted poor Hispanic immigrants obtain rentals. Under these circumstances, Plaintiff may bring an Equal Protection claim pursuant to one of two theories: selective enforcement or "class of one." See AYDM Assocs., LLC v. Town of Pamelia, 205 F.Supp.3d 252, 265 (N.D.N.Y. 2016), aff'd , 692 Fed.Appx. 78 (2d Cir. 2017) (summary order).
In order to state an equal protection claim based upon selective enforcement, a plaintiff must allege that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Id. (citations and quotation marks omitted). To state a class of one claim, a plaintiff must allege that the "plaintiff was intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." Id. at 268 (citations and internal quotation marks omitted). Thus, under either theory, a plaintiff must demonstrate that the defendant intentionally treated him differently from others similarly situated. See id. at 265, 268 ; see also Artec Constr. and Dev. Corp. v. NYC Dep't of Housing Preservation and Dev. , No. 15 Civ. 9494, 2017 WL 782911, at *3 (S.D.N.Y. Feb. 27, 2017) (same).[6]
*51 Here, Defendants argue that the complaint should be dismissed because Plaintiff fails to allege any comparators who were treated differently. In response, Plaintiff argues that paragraph 83 of the complaint satisfies under the pleading standard set forth DeMuria v. Hawkes , 328 F.3d 704, 707 (2d Cir. 2003). Paragraph 83 alleges that Plaintiff "has been singled out and selectively treated unfavorably ... when compared to other real estate professionals similarly situated" and that there is "no lawful, rational basis for Defendants' selective treatment of [Plaintiff]." Compl. ¶ 83. In DeMuria , the Second Circuit found that a plaintiff need not identify in the complaint "actual instances where others have been treated differently for the purposes of equal protection" and that general allegations that similarly situated persons had been treated differently sufficed. 328 F.3d at 707. The DeMuria decision, however, was abrogated by Ruston v. Town Bd. for the Town of Skaneateles , 610 F.3d 55 (2d Cir. 2010), where the Second Circuit held that "the pleading standard set out in Iqbal supersedes the "general allegation" deemed sufficient in DeMuria . Id. at 59. Thus, insofar as DeMuria held that "a 'class of one' claim is adequately pled ('albeit barely' so) even without specification of others similarly situated," that standard is now "obsolete." Id. Applying this new standard, the Second Circuit affirmed the dismissal of plaintiffs' equal protection claims on the pleading where plaintiffs failed to allege similarly situated comparators. Id.
Plaintiff also argues that there is no need to identify comparators because he was "arrested/seized/ticketed and prosecuted without probable cause far too many times to be simply random acts." Pl.'s Mem. in Opp'n at 19, ECF No. 20. In this regard, he relies on two Seventh Circuit cases in support of his argument. See Swanson v City of Chetek , 719 F.3d 780, 784 (7th Cir. 2013) (finding that because "animus [wa]s readily obvious, it [was] redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual"); Geinosky v. City of Chicago , 675 F.3d 743 (7th Cir. 2012) (finding that recipient of 24 bogus parking tickets stated a class of one equal protection claim where "the alleged facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose"). Plaintiff does not cite, and the Court has not located, any case in this Circuit that adopts this theory. See Joglo Realties, Inc. v. Seggos , No. 16-CV-1666, 2016 WL 4491409, at *13 n.9 (E.D.N.Y. Aug. 24, 2016) (noting there is no authority in the Second Circuit for this proposition). Because these cases do not reflect the law in this Circuit, the Court finds that Plaintiff's conclusory allegation that "other real estate professionals" were treated differently is insufficient to state an plausible equal protection violation. Accordingly, the Court respectfully reports and recommends that Plaintiff's Fourteenth Amendment equal protection claims be dismissed. See Weissmann v. Vill. of Sloatsburg , 667 Fed.Appx. 345, 346 (2d Cir. 2016) ("The District Court correctly concluded that plaintiffs-appellants failed to adduce sufficient evidence of a comparator to sustain a class-of-one or a selective-enforcement equal-protection claim.") (summary order); Panzella v. City f Newburgh , 231 F.Supp.3d 1, 8 (S.D.N.Y. 2017) ("[W]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential *52 component of such a[n equal protection] claim [and] [c]onclusory allegations of selective treatment are insufficient.") (citation and internal quotation marks omitted) (collecting cases); Gregory v. Inc. Vill. of Centre Island , No. 14-CV-2889, 2016 WL 4033171, at *7 (E.D.N.Y. July 27, 2016) (granting motion to dismiss where plaintiff "failed to plead the existence of a comparator, and thus ... failed to plead a class-of-one claim").
B. Count III
Count III asserts claims for malicious prosecution, false arrest and malicious abuse of criminal process under federal law. The Court addresses each claim in turn.
1. Malicious Prosecution
Under Section 1983, in order to prevail on a malicious prosecution claim, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York , 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). Under New York law, the elements of a malicious prosecution claim are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello , 612 F.3d at 161 (citations and internal quotation marks omitted). " '[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Id. at 161-62 (quoting Savino v. City of New York , 331 F.3d 63, 72 (2d Cir. 2003) ).
Plaintiffs' malicious prosecution claims are based on his being served with appearance tickets in 2012, 2013 and 2015. As an initial matter, Plaintiff concedes that because the charges associated with the 2015 appearance tickets remain pending, Plaintiff cannot allege a favorable termination. See Pl.'s Mem. in Opp'n at 21, ECF No. 20. Accordingly, the Court recommends dismissal of Plaintiffs' malicious prosecution claims arising out of the 2015 appearance tickets.[7]
As for the remainder of Plaintiff's malicious prosecution claims, Defendants argue that they should be dismissed for failure to allege a Fourth Amendment seizure, lack of probable cause, and a termination of all charges in Plaintiff's favor. Defendants also argue that the individual defendants are entitled to qualified immunity. Because the Court finds that Plaintiff has failed to allege a Fourth Amendment seizure for Fourth Amendment purposes or, alternatively, Defendants are entitled to qualified immunity, the Court does not address Plaintiff's remaining arguments.
"When raising a malicious prosecution claim under Section 1983, a plaintiff must also show a 'seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.' " Mitchell v. City of New York , 841 F.3d 72, 79 (2d Cir. 2016) (quoting Washington v. County of Rockland , 373 F.3d 310, 316 (2d Cir. 2004) ); see also Graham v. City of New York , 869 F.Supp.2d 337, 356 (E.D.N.Y. 2012) ("The federal cause of action for malicious prosecution is more limited in scope than the equivalent claim under New York law. While New York recognizes the tort of *53 civil malicious prosecution, a claim for malicious prosecution under § 1983 may only arise where there has been a violation of the plaintiff's Fourth Amendment rights."). In addition, "since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." Murphy v. Lynn , 118 F.3d 938, 944 (2d Cir. 1997).
Although the complaint generally alleges that Defendants "detained, delayed, seized and arrested" Plaintiff, Compl. ¶ 133, and that Plaintiff was "released on his own recognizance," id. ¶ 135, no details are provided regarding these allegations, such as dates or charges, as they may relate to the 2012 or 2013 charges. Accordingly, the Court disregards these conclusory allegations which do not plausibly allege a seizure for Fourth Amendment purposes.
With regard to the 2012 charges, Plaintiff alleges that he was issued appearance tickets directing his attendance in court if he wanted to avoid arrest by the issuance of formal arrest warrants. Compl. ¶ 36. After "multiple" court appearances in Riverhead Town Justice Court in 2014-2016, all 61 charges were dismissed. Id. ¶ 39. As for the 2013 charges, Plaintiff was issued two appearance tickets and made "at least 2 court appearances in 2014." Id. ¶ 48. Defendant argues that the service of appearance tickets requiring court appearances does not rise to the level of a constitutional seizure. Plaintiff does not address this argument.
The law in this Circuit regarding Fourth Amendment seizures in this context is somewhat unsettled. In Burg v. Gosselin , 591 F.3d 95 (2d Cir. 2010), the Second Circuit evaluated a plaintiff's Section 1983 claim brought against a canine control officer who had issued a summons to the plaintiff requiring her to appear in court at a later date based upon a complaint the town received concerning plaintiff's dog. Id. at 96. After the plaintiff failed to appear, a bench warrant was issued for her arrest and the plaintiff was arrested. Id. ; see also id. at n.2.
The Second Circuit held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." Id. at 98. The Court reasoned that the summons did "no more than require [the plaintiff] to appear in court on a single occasion" and there was "no restriction on travel." Id. The Court added in dictum that although "[t]he number of [court] appearances may bear upon whether there was a seizure, [ ] it is hard to see how multiple appearances required by a court, or for the convenience of the person answering the summons, can be attributed to the conduct of the officer who issues it." Id.
Following Burg , "the weight of district court authority in circumstances ... involving a plaintiff charged with non-felony offenses who was neither arraigned nor physically detained but who might have made a number of court appearances [ ] counsels against finding a constitutional injury." Dellutri v. Vill. of Elmsford , 895 F.Supp.2d 555, 571 (S.D.N.Y. 2012) (collecting cases). Nevertheless, more recent Second Circuit decisions have muddied the waters. In Swartz v. Insogna , 704 F.3d 105 (2d Cir. 2013), the Second Circuit found there to be a post-arraignment seizure where one of the plaintiffs was arrested for disorderly conduct and "was required to appear in court [on three occasions over the course of several years] in connection with criminal proceedings" related to that charge. Id. at 112. Citing its previous holding in Murphy , 118 F.3d 938, that "a post-arraignment defendant who is obligated to *54 appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty," Swartz , 704 F.3d at 112 (quoting Murphy , 118 F.3d at 947 ), the court reasoned that the police officer who arrested the plaintiff and subsequently swore out a criminal complaint "put in motion proceedings that rendered the defendant at all times subject to the orders of the court ... and foreseeably required him to incur the expense of a lawyer and the inconvenience and perhaps expense of multiple court appearances," id. In addition, the Second Circuit questioned the Burg court's suggestion that multiple court appearances could not be attributable to the officer who issued the summons unless the "multiple [court] appearances were for the arrestee's convenience." Id.
One month after issuing its decision in Swartz , the Second Circuit issued a summary order in Faruki v. City of New York , 517 Fed.Appx. 1 (2d Cir. 2013), in which it cited to Burg and held that "the proceedings against [the plaintiff]," who had been charged with trespass, constituted "an insufficient deprivation of liberty to support a Fourth Amendment malicious prosecution claim," as they "placed no restriction on her other than a requirement that she appear in court on two occasions," id. at 1. The Faruki decision does not cite to or otherwise acknowledge the Second Circuit's ruling in Swartz and, as a summary order, has no precedential effect.
Some courts have reconciled Burg with Swartz to mean that: "while the issuance of a pre-arraignment, non-felony summons that merely requires a later court appearance does not constitute a Fourth Amendment seizure, the requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure." MacPherson v. Town of Southampton , No. 07-CV-3497, 2013 WL 6058202, at *5 (E.D.N.Y. Nov. 14, 2013) ; see also Gierlinger v. Town of Brant , No. 13-CV-370, 2015 WL 269131, at *5 (W.D.N.Y. Jan. 21, 2015) (same). Other district courts have ignored Swartz and relied on Burg , finding that a summons requiring even multiple court appearances did not rise to the level of a seizure. Oxman v. Downs , 999 F.Supp.2d 404, 414 (E.D.N.Y. 2014) (citing cases). Still another court has found that it was bound to follow Swartz . Id. (citing Kennedy v. City of New York , No. 11-CV-1451, 2013 WL 3490351, at *5 (E.D.N.Y. July 10, 2013), aff'd , 570 Fed.Appx. 83 (2d Cir. 2014) ).
Here, the complaint alleges that Plaintiff was issued pre-arraignment, non-felony appearance tickets directing his attendance in court to avoid arrest and that he made "multiple court appearances" with regard to the 2012 charges, Compl. ¶¶ 36, 39, and "at least 2 court appearances" with regard to the 2013 charges, id. ¶ 48. No detail is provided regarding these appearances, including whether they were pre-arraignment or post-arraignment, the reasons for the appearances, or how many appearances he made with regard to the 2012 charges. In addition, the complaint is bereft of allegations that Plaintiff was arraigned, physically detained, required to post bail, or placed by court order under any travel restrictions. Given the paucity of allegations, the Court finds that Plaintiff has not alleged sufficient facts to establish that he was seized under the Fourth Amendment for malicious prosecution purposes.
However, even assuming arguendo that Plaintiff has plausibly alleged a Fourth Amendment seizure, the malicious prosecution claim should be dismissed because the individual defendants are entitled to qualified immunity. The doctrine of qualified immunity shields government *55 officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, the law is somewhat unsettled as to whether the issuance of multiple desk appearance tickets can support a constitutional claim for malicious prosecution. See, e.g. , Oxman , 999 F.Supp.2d at 413 (noting that law in this area is "somewhat unclear").[8] Accordingly, based on the allegations of the complaint, the Court finds that the individual Defendants are entitled to qualified immunity on the federal malicious prosecution claim. See Wilson v. Layne , 526 U.S. 603, 618, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("If judges ... disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").
2. False Arrest
"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause ... is substantially the same as a claim for false arrest under New York law." See Weyant v. Okst , 101 F.3d 845, 852 (2d Cir. 1996) (internal citation omitted); Frederique v. County of Nassau , 168 F.Supp.3d 455, 476 (E.D.N.Y. 2016) (noting that the "Fourth Amendment "prohibits unreasonable seizures in the form of arrests without probable cause" and that "[i]n analyzing a claim of false arrest under Section 1983, federal courts look to the law of the state in which the arrest occurred") (citations and internal quotation marks omitted). Under both Section 1983 and New York State law, a plaintiff must show: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." Posr v. Pascale , No. 15 Civ. 0584, 2017 WL 1366004, at *4 (E.D.N.Y. Apr. 12, 2017) (citations and internal quotation marks omitted). The existence of probable cause is a complete defense to a false arrest claim. Id. ; see also Simpson v. City of New York , 793 F.3d 259, 265 (2d Cir. 2015). In determining whether probable cause existed to support an arrest, the court "considers those facts available to the officer at the time of arrest and immediately before it," and renders its decision based on the "totality of the circumstances." Simpson , 793 F.3d at 265 (citation and internal quotation marks omitted).
a. The 2012 Charges
The Court finds that Plaintiff's false arrest claims stemming from the 2012 charges are time-barred. "Although Section 1983 provides a federal cause of action, 'federal law looks to the law of the State in which the cause of action arose ... for the length of the statute of limitations.' " Peterec v. Hilliard , No., No. 12-CV-3944, 2013 WL 5178328, at *3 (S.D.N.Y. Sept. 16, 2013) (quoting Wallace v. Kato , 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ). In New York, the applicable statute of limitations for a Section 1983 claim is three years. See *56 Owens v. Okure , 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) ; N.Y. C.P.L.R. § 214(5). "Federal law, however, determines the date on which a Section 1983 action accrues ... [and t]he statute of limitations for a claim of false imprisonment-and false arrest, which is a species of false imprisonment-begins to run 'when the alleged false imprisonment ends.' " Id. at 4 (quoting Wallace , 549 U.S. at 388-89, 127 S.Ct. 1091 ). "False imprisonment ends when 'the victim becomes held pursuant to legal process-when, for example, he is bound over by a magistrate or arraigned on charges.' " Id. (quoting Lynch v. Suffolk Cnty. Police Dep't, Inc. , 348 Fed.Appx. 672, 675 (2d Cir. 2009) (summary order)).
The complaint alleges that "[d]uring 2012, Defendants' activities had caused at least 61 charges to be served upon [Plaintiff], and prosecutions were set to be adjudicated in the Southampton Town Justice Court after [Plaintiff] was given 'appearance tickets' directing his attendance in court if he wanted to avoid arrests by the issuance of formal arrest warrants." Compl. ¶ 36. The complaint was filed on August 12, 2016. In his opposition papers, Plaintiff asserts that "Defendants lack proof that [Plaintiff] was arraigned before 2014; the federal false arrest claims [stemming from the 2012 charges] appear timely." Pl.'s Mem. in Opp'n at 25, ECF No. 20. Plaintiff mistakes the pleading burden. It is not Defendants' burden to prove that Plaintiff was arraigned outside the limitations period. Rather, it is Plaintiff's burden to allege that Plaintiff was arraigned within that period. Here, Plaintiff has not alleged an arraignment much less any facts supporting the timeliness of these claims. Accordingly, the Court reports and recommends that Plaintiff's false arrest claims emanating out of the 2012 charges be dismissed.
b. The 2013 Charges
The complaint alleges that on or about December 5, 2013, Plaintiff was charged with "2 charges pertaining to property maintenance matters, in a single docket for alleged violations of codes concerning a house on North Sea Road and its 'pool fence' and 'weeds.' " Compl. ¶ 47. Exhibit 2 to the complaint indicates that these charges were brought under docket no. 13120473. The appearance ticket for this docket provides that "upon your failure to appear as above directed, a criminal summons or a warrant for your arrest may be issued." ECF No. 18-1.
Defendants argue that these claims should be dismissed because there is no allegation that Plaintiff was confined or arrested in relation to these charges. Plaintiff does not address this argument in any coherent manner. To the extent Plaintiff's false arrest claim is premised upon an arrest without probable cause, the claim fails as Plaintiff fails to allege that he was arrested in connection with the 2013 charges. While the appearance ticket threatens Plaintiff's arrest if he did not appear in court, there is no allegation that Plaintiff was actually arrested. Indeed, Plaintiff's opposition papers refer to an "arrest" in quotation marks. Pl.'s Mem. in Opp'n at 4, ECF No. 20. Moreover, there are no allegations that Plaintiff was taken into physical custody or somehow unlawfully detained. Insofar as Plaintiff attempts to plead that the appearance tickets constituted a seizure for Fourth Amendment purposes, the Court has already rejected this argument above. See also LoSardo v. Ribaudo , No. 14-CV-6710, 2015 WL 502077, at *5 (E.D.N.Y. Feb. 5, 2015) ("Courts ... have repeatedly held that the issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a false arrest ...
*57 claim."); Lacey v. Yates Cnty. , 30 F.Supp.3d 213, 225 (W.D.N.Y. June 27, 2014) ("An appearance in a local criminal court, even when required pursuant to a criminal summons, does not amount to confinement that will support a false arrest claim."). Accordingly, the Court reports and recommends that Plaintiff's false arrest claims emanating out of the 2013 charges be dismissed.
c. The 2015 Charges
The complaint alleges that on or about April 22, 2015, "inside a courthouse," Plaintiff "was given an additional 22 appearance tickets written by Larios and Glogg for alleged violations of the TOWN's local town code concerning its Rental Permit law in Chapter 270." Compl. ¶ 61. Defendants argue that this claim should be dismissed because there is no allegation of a seizure, including that Plaintiff was arrested in connection with the 2015 charges. Paragraph 129 of the complaint, however, alleges that Plaintiff was "arrested in April 2015 for an additional 21 charges now pending against him for alleged violations of the local Rental Permit law." Id. ¶ 129. Defendant's argument is therefore incorrect.
Defendants also argue that Plaintiff fails to state a valid false arrest claim because the complaint fails to allege that Defendants lacked probable cause to arrest Plaintiff, or at a minimum, lacked arguable probable which would defeat a claim of qualified immunity. See Davis v. City of New York , No. 15 Civ. 5900, 2017 WL 1184287, at *4 (S.D.N.Y. Mar. 28, 2017) ("To receive qualified immunity on a claim for false arrest or malicious prosecution, an officer must show only 'arguable' probable cause."). The complaint alleges that the 2015 charges concern alleged violations of Section 270-3 of the Southampton Town Code, which provides that "no owner shall cause, permit or allow the occupancy or use of a dwelling unit as a rental property without a valid rental permit." Compl. ¶ 68 (citing the Southampton Town Code). The complaint further alleges that Defendants "knew, or should have known ... that [Plaintiff] was neither the owner nor occupant of any of these 21 houses," id. ¶ 72, and therefore had no lawful basis to arrest Plaintiff, id. ¶ 73.
Defendants argue that because the complaint alleges that Plaintiff was "the person who aided and encouraged [the tenants] in securing and continuing occupancy" of the rental dwellings, id. ¶ 70, Defendants reasonably believed that Plaintiff was acting on behalf of the owner, and Defendants therefore had probable cause to arrest Plaintiff. In support of this assertion, Defendants cite to Rodriguez v. Village of Sleepy Hollow , No. 2015 WL 4597446 (S.D.N.Y. July 29, 2015) for the proposition that an agent of the owner can be criminally responsible for code violations. Rodriguez , however, did not involve violations of the rental code provision at issue here, which on its face, seems to limit responsibility to an owner. Moreover, while the Rodriguez court found that the defendants had probable cause to prosecute not only the corporate record owner of the property but also Rodriguez, the court's finding was based on the rationale that a corporation can only act through its officers, and Rodriguez was the president of the corporation. Id. at *1, 7. Here, there are no similar allegations concerning Plaintiff's relationship with the owner of the subject premises. Thus, based on the information before the Court, the Court finds that Defendants' arguments do not warrant dismissal of Plaintiff's false arrest claims stemming out of the 2015 charges. Accordingly, the Court reports and recommends that Defendants' motion be denied with regard to these claims.
*58 3. Abuse of Process
Count III also asserts a claim for federal malicious abuse of process under Section 1983. Preliminarily, the Court agrees with Defendants that Plaintiff's abuse of process claims with respect to the 2012 charges are time-barred. As with Plaintiff's false arrest claims, Plaintiff's abuse of process claims are governed by New York's three-year statute of limitations, but accrual of such claims is governed by federal law. See Hadid v. City of New York , No. 15-CV-19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015). "Under federal law, a claim for abuse of process accrues at such time as the criminal process is set in motion ...." Id. Since Plaintiff did not commence the lawsuit until August 12, 2016 with regard to the 2012 charges, his abuse of process claims emanating out of these charges are untimely.
With regard to the 2013 and 2015 charges, Defendants argue that the abuse of process claims should be dismissed because Plaintiff fails to allege that Defendants had a collateral objective in bringing these charges. "To prevail on a claim for abuse of process under Section 1983 or New York law, a plaintiff must establish that the defendant: (1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Fiedler v. Incandela , 222 F.Supp.3d 141, 164 (E.D.N.Y. 2016) (citations and internal quotation marks omitted). "Moreover, [t]he pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." Id. (citation and internal quotation marks omitted); see also Slater v. Mackey , No. 12-CV-04325, 2015 WL 6971793, at *10 (E.D.N.Y. Nov. 10, 2015) ("[T]o succeed on an abuse of process claim, a plaintiff must not only show a collateral objective, but must show that that objective was pursued after legal process was issued."). Thus, " '[t]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.' " Slater , 2015 WL 6971793, at *10 (quoting Savino v. City of New York , 331 F.3d 63, 77 (2d Cir. 2003) ). " 'In other words, the proper use of legal process based on an improper or malicious motive such as a desire for retaliation is insufficient to satisfy the "collateral objective" requirement.' " Id. (quoting Pinter v. City of New York , 976 F.Supp.2d 539, 568 (S.D.N.Y. 2013) ). "A malicious abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm, extortion, blackmail, or retribution.' " Id. (quoting Hoyos v. City of New York , 999 F.Supp.2d 375, 391 (E.D.N.Y. 2013) ); see also Jackson v. Seewald , No. 11 Civ. 5826, 2013 WL 149341, at *13 (S.D.N.Y. Jan. 14, 2013) ("[T[he plaintiff must allege an improper purpose or objective beyond or in addition to his criminal prosecution; an improper motive is insufficient.").
In response to Defendants' argument, Plaintiff asserts that he has met the collateral objective element by alleging that "Defendants acted with improper purposes when fabricating information to support the arrests and withholding 'notice' and a time to cure the alleged code violations." Pl.'s Mem. in Opp'n at 27, ECF No. 20. This conclusory assertion is insufficient because it does not explain what this "improper purpose[ ]" is. Moreover, while the complaint alleges that Plaintiff was targeted because he assisted in renting *59 houses to Hispanic immigrants with low-paying jobs and that Defendants' objective was "intentionally intimidating [Plaintiff] and hindering the performance of his duties as a real estate professional," Compl. ¶ 139, these allegations indicate that Defendants were seeking to retaliate against Plaintiff by pursuing his arrest and prosecution and do not support a collateral objective beyond this prosecution. See Arrington v. City of New York , No. 14-CV-3023, 2014 WL 11350821, at *7 (E.D.N.Y. Dec. 22, 2014) (finding that plaintiff's "threadbare allegation" that a police officer's collateral objective in commencing plaintiff's prosecution was to punish him for exercising his Second Amendment rights only spoke to the officer's "motivation in initiating criminal charges against plaintiff" and did not "allege that plaintiff's prosecution aimed to achieve some objective 'outside the legitimate ends of the [legal] process.' ") (quoting Savino , 331 F.3d at 77 ), aff'd , 628 Fed.Appx. 46 (2d Cir. 2015) ; Knox v. County of Ulster , No. 1:11-CIV-0112, 2013 WL 286282, at *14 (N.D.N.Y. Jan. 24, 2013) ("Here, Plaintiff alleges only that Defendants' conduct was racially motivated. The Complaint is devoid of any allegations of an improper purpose for the criminal prosecution of Plaintiff beyond the alleged racial discrimination. For this reason, Defendants' motion to dismiss Plaintiff's abuse of process claim is granted."). Moreover, to the extent the complaint can be read to allege that Defendants acted to harm Plaintiff business, these allegations fails as well. See Goldring v. Zumo , No. 14 Civ. 4861, 2015 WL 148451, at *3 (E.D.N.Y. Jan. 12, 2015) ("The weight of the limited district court authority in this Circuit suggests that in the criminal context, harm to a plaintiff's business is not sufficient unless it is used a means to compel some other result.") (collecting cases). Accordingly, the Court respectfully reports and recommends that Plaintiff's abuse of process claims be dismissed.
C. Count IV
Count IV asserts that the Town, through the actions of some unidentified Town attorneys, violated § 487 of New York Judiciary Law. In support of this claim, the complaint alleges that the Town, "through its Town Attorney's Office and the town attorneys employed by the Town, engaged in acts of deceit and/or consented to acts of deceit and collusion, with the intent to deceive judges presiding over matters in which [Plaintiff] was a defendant in various state criminal courts, causing financial aid economic injuries to [Plaintiff]." Compl. ¶ 147. The complaint further alleges that these unidentified Town attorneys filed complaint in which the individual Defendants were the complainants and "supplied the Justice Courts with attorney affirmations, with the intent to give the Justice Courts a false impression about the viability of the code charges against [Plaintiff.]" Id. ¶ 150.
Section 487 provides as follows:
An attorney or counselor who:
1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.
N.Y. Judiciary Law § 487. Defendants argue that this claim should be dismissed because municipal attorneys are immune *60 from liability under § 487 of New York Judiciary Law. See Rudow v. City of New York , 822 F.2d 324, 329 (2d Cir. 1987) (holding that a municipal attorney was "absolutely immune to liability under section 487" and rejecting argument that "New York's attorney misconduct statute, N.Y. Jud. Law § 487, applies to the prosecutorial acts of municipal attorneys"). Plaintiff does not dispute this assertion and instead suggests that the Town may be vicariously liable under § 487 for the acts of its attorneys.
"[T]here remains a serious question as to whether section 487 was intended to make municipal employers liable for acts of malfeasance by attorneys in their employ, especially when those attorneys themselves are protected by absolute immunity." Rudow v. City of New York , 642 F.Supp. 1456, 1472 (S.D.N.Y. 1986), aff'd , 822 F.2d 324 (2d Cir. 1987) (noting in dictum that although plaintiff's claims under § 487 were barred against municipal attorney, plaintiff's "direct action against the City under section 487, which provides, inter alia , triple damages for attorney deceit, was, until withdrawn, all the remedy to which [the plaintiff] was entitled."); see also Polanco v. NCO Portfolio Mgmt., Inc. , 23 F.Supp.3d 363, 377 (S.D.N.Y. 2014) ("The law is somewhat uncertain as to whether such a vicarious-liability claim is possible under Section 487(1).").
Moreover, although Defendant argues that Plaintiff's § 487 claim should be dismissed for failure to comply with N.Y. General Municipal Law §§ 50-e and 50 -1, which require the filing of a notice of claim if a plaintiff asserts a tort claim against a municipality, it is unclear whether § 487 is properly classified as a tort claim. Although the Second Circuit in Rudow stated that "[a] violation of section 487 is ... a garden variety tort," the New York Court of Appeals later found that " section 487 is not a codification of a common-law cause of action for fraud. Rather, section 487 is a unique statute of ancient origin in the criminal law of England." Amalfitano v. Rosenberg , 12 N.Y.3d 8, 14, 874 N.Y.S.2d 868, 903 N.E.2d 265 (2009) ("[S]ection 487 was for many years placed in the state's penal law, which supports the argument that the more appropriate context for analysis is not the law applicable to comparable civil torts but rather criminal law.") (citation and internal quotation marks omitted). But see Peterson v. Tomaselli , 469 F.Supp.2d 146, 170 (S.D.N.Y. 2007) (finding that plaintiff's failure to file notice of claim warranted dismissal of his § 487 claim against City of New York and prosecutor).
In any event, the Court need not reach these issues because even if respondeat superior liability were available on a claim under § 487(1) and even if the notice of claim requirement was applicable, Plaintiff's claim would still be subject to dismissal because Plaintiff has not alleged sufficient facts to allow this Court to plausibly find that the a Town attorney acted with "deceit or collusion, with intent to deceive the court." N.Y. Jud. Law § 487(2). Other than generally alleging that "town attorneys" filed "purported complaints" based upon information received by the Individual Defendants, there are no allegations supporting an inference that any Town attorney knew such information to be false or acted with intent to deceive the court. Indeed, there are no facts identifying the Town attorneys allegedly implicated or which specific complaint they were involved with. Accordingly, the Court respectfully reports and recommends that Count IV be dismissed.
D. Municipal Liability
Defendants move to dismiss the claims against the Town on the *61 grounds that, inter alia, the complaint fails to allege a constitutional violation resulting from a municipal policy. The Court agrees. It is well established that a municipality or municipal entity cannot be held liable under Section 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of City of N.Y. , 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, a municipal entity may only be held liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] ... [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decision[ ]making channels." Id. at 690-91, 98 S.Ct. 2018. The plaintiff must show a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." City of Canton v. Harris , 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Thus, to establish a municipal liability claim under Section 1983, Plaintiffs must show that their constitutional rights were violated as the result of a policy, custom or practice of the municipality.
To show a policy, custom, or practice for purposes of Monell , a plaintiff need not identify an expressly adopted rule. Rather, the existence of a municipal policy or custom may be plead in any of the following four ways:
A plaintiff may allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.
Calicchio v. Sachem Cent. Sch. Dist. , 185 F.Supp.3d 303, 311 (E.D.N.Y. 2016).
Here, the complaint does not contain allegations to substantiate any of the four Monell categories. See, e.g. , Vail v. City of New York , 68 F.Supp.3d 412, 431 (S.D.N.Y. 2014) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction, but either way Plaintiff must allege it with factual specificity, rather than by bare and conclusory statements.") (citations and internal quotation marks omitted). Although the complaint generally alleges that the Town "failed to train employees and to prevent civil rights violations that occurred in their presence," Compl. ¶ 117, the complaint is devoid of any specific reference to a failure by the Town to do so, no less does it contain allegations suggesting that the lack of training or supervision amounted to deliberate indifference to the rights of those who come in contact with municipal employees. See Jones v. Town of East Haven , 691 F.3d 72, 81 (2d Cir. 2012) ("To establish deliberate indifference[,] a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."). Plaintiff's opposition papers do not address this issue at all, except to generally assert that "there is a good faith argument for the modification of" the policy requirement and to refer to a letter outside of the pleadings which does not bear on this issue. Pl.'s Mem. in Opp'n at 29, ECF No. 20. Accordingly, the Court respectfully reports and recommends that Plaintiff's *62 Section 1983 claims against the Town be dismissed.
E. Plaintiff's Brady Allegations
To the extent the Complaint can be read to assert a violation under Brady v. Maryland , 73 U.S. 83, 6 Wall. 83, 18 L.Ed. 727 (1963), see Compl. ¶ 44 (alleging that the Town failed to retain any exculpatory information as required), Plaintiff's allegations fail to state a claim because Plaintiff failed to allege that he was convicted or plead guilty to the charges against him and that the convictions or pleas were subsequently vacated. See Heck v. Humphrey , 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ; Poventud v. City of New York , 750 F.3d 121, 132-34 (2d Cir. 2014) ; see also Smalls v. City of New York , 181 F.Supp.3d 178, 184 (E.D.N.Y 2016) ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.") (citations and internal quotation marks omitted). Accordingly, the Court respectfully reports and recommends that any Brady violations read into the complaint be dismissed.
F. Plaintiff's Allegations of a Media Ride-Along
The complaint alleges that Defendants engaged in unconstitutional "media ride-alongs." More specifically, Plaintiff alleges that "[a]t one or more times during the days immediately before and/or around a pre-trial conference held before Justice Schiavoni on August 8, 2016 in connection with" 2015 charges, "both Glogg and Larios deliberately and intentionally reached out to a news and video crew of one or more local news channels" to authorize an "unconstitutional 'media ride-along' inside certain homes occupied by immigrant Hispanic tenants who had sought [Plaintiff's] assistance in finding them rental housing. Compl. ¶ 107. Defendants' alleged purpose was to "protect their own jobs" and to "poison[ ] the local jury pool." Id. ¶ 110. Allegedly, there was an "unnecessary presence of news reporters in one or more [of] the homes while photographing and videotaping personal effects and persons." Id. ¶ 109.
The Supreme Court has recognized that the Fourth Amendment is violated if the media overly intrudes into a law enforcement operation. See Wilson v. Layne , 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("[I]t is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant."). Plaintiff's conclusory allegations of a "media ride-along," without a single specific allegation to support this claim are insufficient to state a cause of action. The complaint contains no details regarding these alleged media ride-alongs, such as where they took place; who participated in them; why Glogg and Larios were at these homes-there is no indication they were executing a search warrant; whether the residents consented to the alleged press coverage; and the content of the coverage. Moreover, Plaintiff has not addressed Defendants' argument that Plaintiff-who is attempting to vicariously raise the rights of the residents of the premises where the media ride-alongs occurred-lacks standing to assert a Fourth Amendment claim. Accordingly, the Court reports and recommends that this claim be dismissed.[9]
*63 G. Leave to Amend
In one sentence at the end of his brief, Plaintiff requests leave to amend should the Court identify pleading imperfections. Despite Plaintiff's failure to identify any additional facts that he would allege in support of his claims, "it is the usual practice upon granting a motion to dismiss to allow leave to replead." Cruz v. TD Bank, N.A. , 742 F.3d 520, 523 (2d Cir. 2013). Plaintiff is cautioned, however, that should this Report be adopted, amendment should only be attempted if he has additional factual matters to allege that would remedy the deficits identified in this Report and Recommendation.
CONCLUSION
For the reasons stated above, the Court respectfully reports and recommends that Defendants' motion to dismiss be granted in part and denied in part. The Court recommends that Defendants' motion be granted with regard to all of Plaintiff's claims with the exception of Plaintiff's federal false arrest claims stemming from the 2015 charges against defendants Larios and Glogg.[10]
OBJECTIONS
A copy of this Report and Recommendation is being electronically filed on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within fourteen (14) days of service. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1) ; Fed. R. Civ. P. 72 ; Beverly v. Walker , 118 F.3d 900, 902 (2d Cir. 1997) ; Savoie v. Merchants Bank , 84 F.3d 52, 60 (2d Cir. 1996).

See Global Network Commc'ns, Inc. v. City of N.Y. , 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Although raised by Defendants in their moving papers, Plaintiff does not address his status in his opposition papers and never denies being the owner of the property. Nonetheless, the Court is limited to the allegations of the complaint on this Rule 12(b)(6) motion.

See Jurkowitsch v. City of New York , No. 14 CV 6810, 2015 WL 8489964, at *1 n.4 (E.D.N.Y. Dec. 9, 2015) (taking judicial notice of the existence of a desk appearance ticket), aff'd , 673 Fed.Appx. 44 (2d Cir. 2016).

Plaintiff does not allege that these violations did not exist.

Plaintiff's reliance on People v. Plateau Assocs., LLC , 46 Misc.3d 1, 997 N.Y.S.2d 590 (Sup. Ct. App. Term 2014) is misplaced as that case involved two orders to remedy issued by the Village of Ossining which directed the defendants to remedy the violations immediately. Id. at 592. The court held that in the absence of a Department of State regulation setting the time frame for compliance with an order to remedy, the accusatory instrument was facially insufficient. Id. at 593-94. The instant case, however, does not involve an order to remedy and instead concerns the Town's decision to issue appearance tickets against Plaintiff.

Although the Second Circuit has not yet resolved whether "different standards govern the showing necessary to demonstrate unequal treatment under [class of one] and [selective enforcement] claims," 33 Seminary LLC v. The City of Binghamton , 670 Fed.Appx. 727, 730 n.2 (2d Cir. Nov. 23, 2016) (summary order), "[u]nder either standard, a plaintiff must make some showing of different or unequal treatment," and that the defendants "intentionally treated them differently from other[s] similarly situated," id. at 730 (emphasis in original).

Plaintiffs' request that the Court sustain these claims but stay discovery should be denied since these claims fail to state a claim.

Although the applicability of a qualified immunity defense is often fact-intensive, "if, upon drawing every factual inference in favor of the plaintiff, the question is purely the state of the law at the time of a defendant's allegedly tortious conduct, so that the court can determine whether a reasonable state agent should have known that what he was doing violated the law, then a court can determine the availability of qualified immunity on a motion to dismiss under Rule 12(b)(6)." Birch v. City of New York , 184 F.Supp.3d 21, 28 (E.D.N.Y. 2016), aff'd , 675 Fed.Appx. 43 (2d Cir. 2017).

Plaintiff's opposition makes a vague reference to the Sixth Amendment and asserts that the media ride-along was "intended to transgress Plaintiff's rights to a fair trial with an impartial jury." Pl.'s Mem. in Opp'n at 19, ECF No. 28. Other than a general allegation of "poisoning the local jury pool," Compl. ¶ 110, this purported Sixth Amendment claim was not raised in the complaint, and there are no factual allegations to support such a claim.

Because the only claims the Court finds have merit are those against Larios and Glogg, the Court need not address Defendants' argument that the Section 1983 claims against Officer Kauth and Marshall Rankin should be dismissed because Plaintiff has insufficiently alleged their personal involvement.